IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWAYNE RIECO, | ) | |
| | ) | Civil Action No. 2: 14-cv-00351 |
| Plaintiff, | ) | |
| | ) | United States District Judge |
| v. | ) | Arthur J. Schwab |
| | ) | |
| BRIAN COLEMAN, et al, | ) | United States Magistrate Judge |
| Defendants. | ) | Cynthia Reed Eddy |
| | ) | |
| | ) | |

REPORT AND RECOMMENDATION

## I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by Defendant Dr. Saavedra (ECF No. 39), and the Motion to Dismiss filed by the DOC Defendants[1] (ECF No. 41), both of which have been converted into a Motion for Summary Judgment on the issue of exhaustion, be granted.

## II. REPORT

### A. *Relevant and Material Facts*

Plaintiff, Dwayne Rieco ("Plaintiff" or "Rieco"), is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") currently confined at SCI-Pittsburgh. He commenced this action on March 18, 2014, with the filing of Motion for Leave to Proceed in forma pauperis (ECF No. 1). The Motion was granted and his Complaint was filed on March 27, 2014 (ECF No. 3).

Plaintiff brings his claims under 42 U.S.C. § 1983. Named as defendants are various staff at SCI-Fayette, as well as grievance appeal officers, and hearing examiners. Plaintiff's

---

[1] The DOC Defendants are Brian Coleman, Doctor Gallucci, Counselor Buzas, Rhonda House, Dorina Varner, Robin Lewis, Sgt. Larry Lewis, Robert Mackey, and Keri Cross.

claims arise from his initial placement at SCI-Fayette into the Secure Special Needs Unit ("SSNU"), which he alleges occurred in March 2012. Specifically, Plaintiff claims that Superintendent Coleman and Dr. Gallucci violated his due process rights by placing him in a mental health program that was not part of his sentence or ordered by the Court. Further, the Complaint states that Defendant Sgt. Lewis is related to Plaintiff's ex-wife Peggy and that Defendant Lewis and others issued falsified misconduct reports to keep him in the RHU at SCI-Fayette and caused him to be placed in the SSNU mental health program "by an act of double jeopardy."

Rieco also sues several hearing officers who conducted hearings or heard misconduct appeals in connection with the alleged false misconducts leading up to his SSNU placement – Hearing Examiners Ken Cross and Richard Mackey, deceased (incorrectly listed on the docket as "Robert"),[2] and Chief Hearing Examiner Robin Lewis.

Rieco sues Counselor Buzas because of his response to Plaintiff's grievance; Grievance Coordinator Rhonda House for obstructing the grievance process; and Chief of Grievance Appeals Dorina Varner because she rejected his appeals.

Finally, Rieco sues Dr. Saavedra, incorrectly identified as Doctor Savaadre. His allegation against Dr. Saavedra is as follows:

> DR. SAAVDRE, UNLAWFUL USE OF MEDICAL LICENSE TO DEFAMATE (SIC) AND SLANDER PLAINTIFF'S TRUE CHARACTER, FALSIFICATION OF OFFICIAL RECORDS, HE WAS ASKED IF HE HAD A COURT ORDER

---

[2] DOC Defendants have filed a Suggestion of Death for Defendant Mackey, a former Hearing Examiner for Pennsylvania Department of Corrections, who died on August 29, 2014. According to Federal Rule of Civil Procedure 25(a)(1), an action against a deceased party shall be dismissed if a Motion for Substitution of the proper party is not made within 90 days after a Suggestion of Death is filed. See Ray v. Kertes, 130 F. App'x 541 (3d Cir. 2005). The Suggestion was filed in this case on December 2, 2014, and 90 days has expired without a Motion for Substitution of the proper party for the Defendant Mackey. Therefore, this action shall be dismissed against him. An appropriate Order follows.

TO EVALUATE PLAINTIFF HE SAID NO, PLAINTIFF DID NOT SIGN AN INFORMED CONSENT FORM TO PERMIT TREATMENT OR ANY PSYCHIATRIC QUESTIONING AND PLAINTIFF WAS NOT A CLEAR AND PRESENT DANGER NO DUE PROCESS IS AFFORDED, UNDER COLOR OF STATE LAW.

Complaint at 6-7 (ECF No. 3).

Defendant Dr. Saavedra and the DOC Defendants have each filed a motion to dismiss, both arguing that the Complaint should be dismissed as Plaintiff failed to exhaust his administrative remedies and, in the alternative, that the Complaint fails to state a claim. Because Defendants presented material outside of the Complaint, the Court converted the motion to dismiss into a motion for summary judgment on the issue of exhaustion, and allowed the parties time to submit additional briefing and evidence. The issues now have been fully briefed and the factual record has been thoroughly developed. (ECF Nos. 40, 42, 48, 49, 50, 60, 61, 62, and 63.) The matter is ripe for disposition.

Upon careful consideration, the Court finds that the summary judgment record clearly supports Defendants' assertion that Plaintiff failed to exhaust his administrative remedies. As discussed below, Plaintiff's explanations for his failure are insufficient to excuse the exhaustion requirement and it is, therefore, recommended that summary judgment in Defendants' favor is warranted.

B. *Standard of Review*[3]

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the

---

[3] Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972).

party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp. .*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). The burden then shifts to the nonmovant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989) (the nonmovant must present affirmative evidence-more than a scintilla but less than a preponderance-which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

    C.    *The Prison Litigation Reform Act*

        1.    <u>The Exhaustion Requirement</u>

Through the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 321 (1996), Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the Act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." *Small v. Camden County*, 728 F.3d 265, 270 n.3 (3d Cir. 2013).[4] The requirement that an inmate exhaust administrative remedies applies to all inmate lawsuits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002); *Cutter v. Wilkinson*, 544 U.S. 709, 723 n. 12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); *Concepcion v. Morton*, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

Moreover, the PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance / appeal system and a procedurally defective administrative grievance or appeal precludes action in federal court. *Fennell v. Cambria County Prison*, -- F. App'x ---, No.

---

[4] "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" *Small*, 728 F.3d at 270 (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010). *See also Nyhuis v. Reno*, 204 F.3d 65, 69 n. 4 (3d Cir. 2000) ("[W]e agree with the clear majority of courts that § 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

13-4276, 2015 WL 1534381 at *2 (3d Cir. Apr. 7, 2015) (citing *Woodford v. Ngo*, 548 U.S. 81, 84, 90-91 (2006) and *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2008)).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance or appeal, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan,* 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, courts have recognized a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman,* 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance / appeal procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris*, 149 F. App'x at 59. Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. *Davis*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to

6

exhaust, if it also appears that the prisoner did not pursue a proper grievance / appeal once those impediments were removed. *Oliver v. Moore*, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

### 2. The Administrative Process Available to State Inmates

No analysis of exhaustion may be made absent an understanding of the administrative appeal process available to state inmates when an inmate is being recommended for transfer to a Special Housing Unit. According to DC-ADM 802, Section 2(D)(6), when an inmate is being recommended for transfer to a Special Housing Unit, which includes the SSNU, the Program Review Committee ("PRC") shall review the recommendation with the inmate and inform him of the reasons for the transfer recommendation. The inmate is then given an opportunity to respond to the recommendation and can object to the placement in the special housing unit. The recommendation for placement is documented on the DC-141, Part 4, and the inmate is provided with a copy. The inmate may appeal the recommendation for the transfer to the Facility Manager and then to the Chief Hearing Examiner's Office at Central Office.

Inmates are provided with copies of the Inmate Handbook upon entering the prison system. The Handbook contains DC-ADM 802, which clearly describes the steps that need to be taken in order to properly appeal SSNU placement. Additionally, copies of the relevant policies are available in the law library. *See* Declaration of Jamie Boyd, Acting Hearing Officer, Exhibit 1 at ¶ 4 (ECF No. 60-1).

C. *Discussion*

In the instant case, Rieco is challenging his initial SSNU placement, claiming it was involuntary and without his consent, not ordered by a Court or Hearing Officer, and not part of

7

his sentence. He equates the SSNU with involuntary treatment under the Mental Health Procedures Act. It appears that Rieco is arguing that before being transferred to the SSNU, due process requires that he first have a hearing, a transcription of testimony, lay assistance, a second opinion, and the opportunity for cross examination.[5] Defendants urge the Court to grant summary judgment on Plaintiff's claims because Rieco failed to fully exhaust the administrative remedies available to him under the DOC prison regulations.

It is undisputed that Plaintiff never appealed pursuant to DC-ADM 802 his SSNU placement to the Chief Hearing Examiner's Office at Central Office. *See* Declaration of Jaime Boyd, the DOC Acting Chief Hearing Examiner (ECF No. 60-1). Rather, he filed a grievance pursuant to DC-ADM 804 requesting monetary damages for a violation of his due process rights.[6]

Rieco argues that his failure to exhaust should be excused because the Defendants failed to give him notice of DOC Policy 13.8.1, which outlines the procedures for an inmate to appeal the recommendation for placement in the SSNU, and that he never received DC-141, Part 4. Additionally, Rieco argues that "the exhaustion of remedies is a hearing, witnesses, cross examination of the adverse party, impartial decision maker, notice of a hearing, lay adviser, and copy of the verdict and appeals to the final decision." Pl's Sur-Reply at 10 (ECF No. 63).

---

[5] Although Plaintiff claims he is suing under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, the thrust of the complaint is denial of procedural due process.

[6] Rieco filed grievance No. 396900 claiming he was being denied due process in connection with his SSNU placement. According to that grievance, Plaintiff's records had been illegally documented to show he suffers "a paranoia schizophrenia," which he disputes. Rieco requested monetary damages in the amount of $2.5 million in compensatory damages and $5,000,000 in punitive damages from each SCI-Fayette staff member involved in the falsification of his records. This grievance was dismissed at the final appeal stage because it was untimely.

The DOC Policy 13.8.1, which was in effect during the events complained of in Plaintiff's complaint, basically mirrors DC-ADM 802, Section 2(D)(6), and provides, in pertinent part, as follows:

> When an inmate is being recommended for transfer to an SSNU, . . . The inmate will be given the opportunity to . . . object to his/her placement in an SSNU, if he/she so desires. The inmate may appeal the recommendation for transfer to the Facility Manager / designee and Central Office, as outlined in Department Policy DC-ADM 802, "Administrative Custody" and DC-ADM 801, "Inmate Discipline."

DOC Policy 13.8.1, Access to Mental Health Care Procedures Manual, Section 10 – Secure Residential Treatment Unit (SRTU) (dated June 14, 2004), ECF No. 62.[7]

The summary judgment evidence of record reflects that Plaintiff was personally informed of the recommendation to transfer him to the SSNU, that the appeal process was explained to him, and that he failed to follow that procedure. In denying his Grievance, Stephen Buzas, Unit Manager, explained as follows:

> I have investigated your claim that you were denied due process when you were informed that you were approved for SSNU placement. I found that on 01/11/2012 you were seen by PRC on J-block and informed by Deputy Armel that SCI-Fayette was recommending you for the SSNU program. Deputy Armel recalls explaining to you the approval and appeal process. There is an ICAR note from the 01/11/2012 PRC review that explains that you were informed of the institution's plan of referring you to the SSNU. I conclude that you were informed of the appeal process by Deputy Armel and that you were not denied due process. I consider this grievance denied.

Initial Review Response, ECF No. 42-1.

The summary judgment record is undisputed that Plaintiff was informed of his opportunity to appeal his SSNU placement. The procedure for appealing the recommendation for

---

[7] Rieco attached as an exhibit a portion of Policy 13.8.1; however, the version Rieco attached was dated February 17, 2014. Therefore, this version was not in effect at the time of the events complained of in this lawsuit. *See* ECF No. 49-2.

transfer to SSNU is included in the inmate handbook, which is provided to each inmate upon entering the prison system, and is made available in the law library. Further, Rieco was verbally informed of the appeal process regarding the recommendation that he be placed in the SSNU. (ECF No. 42-1 at 8).[8]

In sum, Rieco's failure to exhaust his administrative remedies is both unexcused and inexcusable. Therefore, this failure to exhaust, which is required by law as a prerequisite to filing a lawsuit, now bars Rieco from further pursing his claim regarding his initial placement in the SSNU while incarcerated at SCI-Fayette. Accordingly, the Court recommends that summary judgment be granted in favor of all Defendants.

**III.    Conclusion**

For the reasons stated above, it is respectfully recommended that the Motion to Dismiss filed by Defendant Dr. Saavedra (ECF No. 39), and the Motion to Dismiss filed by the DOC Defendants (ECF No. 41), which have been converted into Motions for Summary Judgment on the exhaustion issue, be granted on the ground that Plaintiff did not properly exhaust his administrative remedies pursuant to the PLRA.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file Objections to this Report And Recommendation. Any party opposing the objections shall have fourteen (14) days after date of

---

[8]    Because the Court finds that Rieco has failed to exhaust his administrative remedies, there is no need to address whether Defendants' alternative argument that the Complaint should be dismissed for failure to state a claim.

service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

                                                                             s/ Cynthia Reed Eddy
                                                                             Cynthia Reed Eddy
                                                                             United States Magistrate Judge

Dated: May 7, 2015

cc:      DWAYNE RIECO
         HU2494
         PO Box 99991
         Pittsburgh, PA 15233
         (via U.S. First Class Mail)

         Mary Lynch Friedline
         Yana L. Warshafsky
         (via ECF electronic notification)

         Cassidy L. Neal
         Mats Baum O'Connor P.C.
         (via ECF electronic notification)